## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

BRINLEY HOLDINGS, INC.;
FREESTREAM AIRCRAFT
(BERMUDA) LTD.,

        Plaintiffs,

        v.

HUSCH BLACKWELL LLP;
MICHAEL A. COSBY,

        Defendants.

No. 19-cv-05242

Judge John F. Kness

## MEMORANDUM OPINION AND ORDER

Brinley Holdings, Inc. and Freestream Aircraft (Bermuda) Ltd., aircraft brokers and Plaintiffs in this case, tried but failed to broker an agreement under which they would purchase a commercial aircraft and then resell it at a profit. When the deal fell apart, Plaintiffs brought at least two lawsuits against various entities that, Plaintiffs say, unlawfully interfered with the anticipated sale. In this case, Plaintiffs allege that Defendants, a lawyer and his firm who represented other brokers competing with Plaintiffs, disrupted the deal by unlawfully interfering with the negotiations. Plaintiffs advance an assortment of tort-based and equitable claims based on Defendants' alleged conduct.

Defendants now move to dismiss the complaint and argue that Plaintiffs' claims lack specificity, are duplicative, and otherwise fail as a matter of law. Defendants also seek to strike some of Plaintiffs' damages-related prayers for relief. For the reasons that follow, Defendants' motion to dismiss is granted in part and

denied in part, and the motion to strike is denied. Because Plaintiff Freestream, which was not a party to the relevant agreements, cannot show that it has a legal entitlement to relief in this case, its claims are dismissed. In addition, Plaintiffs' aiding and abetting claims in Counts II and IV impermissibly duplicate the allegations in Counts I and III and are similarly dismissed. And because the unjust enrichment claim in Count V fails as a matter of law, it too is dismissed. But because the claims in Counts I and III are sufficiently particularized, and because Defendants' motion to strike is premature, Defendants' motion on those points is denied.

## I.   BACKGROUND

Brinley, an aircraft holding corporation, and Freestream, an aircraft broker, sought to buy an Airbus A319 aircraft from Dublin-based Yunhua Corporate Jet Leasing Designated Activity Company for the purpose of reselling it to another buyer at a profit. (Dkt. 1 ¶¶ 1, 15, 27–31.) Brinley proposed a "back-to-back" deal in which it would purchase the aircraft from Yunhua for $50 million and then sell it to a separate company called Bolti for $57 million. (*Id.* ¶¶ 29–30.) Brinley intended to split its $7 million profit with Freestream. (*Id.* ¶ 31.) Letters of Intent between Yunhua and Brinley and between Brinley and Bolti detailed the basic terms of the transaction. (*Id.* ¶¶ 27–31.) The contingent nature of the transaction—Brinley would be on the contractual hook with Yunhua only if Bolti in turn agreed to purchase the aircraft—is critical to the dispute between the parties in this case.

Plaintiffs allege that, as they worked to consummate the sequential transactions, Defendants interfered by pushing Yunhua to sell its aircraft through Defendants' client. (*Id.* ¶¶ 32–44.) According to Plaintiffs, Defendants represented

several entities, including RSH Aviation, Inc., owned by an individual named John Dusek (*Id.* ¶¶ 2, 12, 14.) These entities (the "Dusek Entities") learned of the planned aircraft sale in June 2018. (*Id.* ¶ 32.) Defendants, on behalf of their clients, engaged in a series of communications with Bolti and its representatives to divert the aircraft sale from Brinley to the Dusek Entities. (*Id.* ¶¶ 34–35.) Plaintiffs further contend that Defendants also communicated with Yunhua and its parent entity, the China-based ICBC Financial Leasing Co., Ltd., to encourage Yunhua to break the agreement with Brinley and complete the transaction through the Dusek Entities. (*Id.* ¶¶ 36–38.) Plaintiffs maintain that Defendants represented to Yunhua that they could get the aircraft sale completed without the need for a contingent buyer on the other end of the sale. (*Id.* ¶¶ 16, 37–38.) In Plaintiffs' view, Defendants made false representations to Yunhua, and Defendants in fact needed a buyer (conveniently, Bolti) to complete the transaction. (*Id.*)

When Plaintiffs learned of the conversations with Yunhua and Bolti, they sent the Dusek Entities a cease-and-desist letter explaining that Brinley had exclusive rights to purchase the aircraft from Yunhua. (*Id.* ¶ 40.) Ignoring that letter, Defendants continued their conversations with Yunhua and Bolti about the aircraft sale and, eventually, Yunhua backed out of the Brinley transaction. (*Id.* ¶¶ 42–44.)

That hoped-for new deal involving the Dusek Entities, however, itself failed to close, which led to another round of negotiations between Brinley, Yunhua, and Bolti. (*Id.* ¶¶ 45–46.) In August 2018, Brinley renegotiated the same back-to-back transaction with Yunhua and Bolti, this time at a reduced sale price—$46 million between Yunhua and Brinley and $48 million between Brinley and Bolti. (*Id.* ¶¶ 47–

49.) Brinley intended to split the now-reduced $2 million profit with Freestream. (*Id.* ¶ 48.) When the Dusek Entities learned of the new transaction, they once again reengaged in conversations with Yunhua and Bolti to try to divert the sale afresh. (*Id.* ¶¶ 50–51.) Defendants, on behalf of the Dusek Entities, told Bolti they could arrange for the sale of the aircraft for $46 million total, $2 million less than the amount Brinley offered. (*Id.* ¶ 51.)

Although most of the interference alleged by Plaintiffs is directed at the nonparty Dusek Entities,[1] Plaintiffs allege specific instances of interference by Defendants. Plaintiffs allege that Defendants were aware of the Dusek Entities' false representations to Yunhua but failed to correct them. (Dkt. 21 at 5–6.) Plaintiffs also point to a series of emails involving Defendants where representatives from ICBC memorialized their understanding of the proposed Dusek Entities transaction. (Dkt. 1 ¶¶ 75–82.) More specifically, Plaintiffs cite Yunhua's mistaken belief that the Dusek Entities transaction would not be a back-to-back transaction (*Id.* at ¶¶ 72–73) and thus did not involve Bolti (*Id.* ¶ 68.) According to Plaintiffs, Defendants failed to correct Yunhua's understanding of the proposed transaction until much later in the negotiations. (*Id.* ) Indeed, according to the complaint, when Yunhua learned that the transaction Defendants and Dusek were planning to complete was a back-to-back transaction, Yunhua terminated the negotiation. (*Id.* ¶¶ 72–84.)

---

[1] Before filing this action, Plaintiffs brought a separate lawsuit against Dusek and the Dusek Entities. That suit is currently pending before another judge in this District. *Brinley Holdings, Inc. & Freestream Aircraft (Bermuda) Ltd. v. RSH Aviation, Inc. and John T. Dusek III*, No. 18-cv-06546. Plaintiffs state that they attempted to bring Husch Blackwell and Michael A. Cosby into that case with an amended complaint, but the Dusek Entities (through Husch Blackwell) stated they would oppose that effort. (Dkt. 21 at 2, n.1.) To short-circuit that dispute, Plaintiffs brought this separate suit against Husch Blackwell and Cosby. (*Id.*)

Plaintiffs further allege that Defendants tried to encourage a Bolti affiliate to push the transaction away from Brinley and towards the Dusek Entities. (*Id.* ¶¶ 85–102.) According to Plaintiffs, Dusek contacted an employee of a Bolti affiliate, Moussa Diarra, and offered to pay him a portion of the proceeds if he could divert the transaction from Brinley to Dusek. (*Id.*) Defendants were aware of the conversations with Diarra and communicated directly with him about that "commission agreement." (*Id.* ¶¶ 90–92.)

Defendants now move to dismiss Plaintiffs' complaint for several reasons. Defendants first contend that Plaintiffs' complaint violates Rule 9(b) of the Federal Rules of Civil Procedure by failing to describe Defendants' allegedly fraudulent conduct with sufficient particularity. Second, Defendants contend that two of Plaintiffs' counts are duplicative and should be dismissed. Third, Defendants contend that Plaintiffs' claim for unjust enrichment fails to state a claim as a matter of law. Fourth, Defendants argue that any claims brought by Freestream are invalid as a matter of law because Illinois law prohibits tortious-interference claims by third-party beneficiaries. In addition to their motion to dismiss, Defendants also seek to strike Plaintiffs' requests for punitive damages, disgorgement, restitution, attorneys' fees, and pre-judgment damages under Rule 12(f)(2) of the Federal Rules of Civil Procedure.

## II. LEGAL STANDARD

A complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That short and plain statement must "give the defendant fair notice of what the claim is and the

grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal punctuation omitted). The Seventh Circuit explained that rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)).

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Each complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Those allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Although legal conclusions are not entitled to the assumption of truth, *Iqbal*, 556 U.S. at 678–79, the Court, in evaluating a motion to dismiss, must accept as true the complaint's factual allegations and draw reasonable inferences in the plaintiff's favor. *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011).

## III. DISCUSSION

### A. *Motion to Dismiss Freestream's Claims*

Up first is Defendant's request to dismiss all of the claims brought on behalf of Freestream. According to Defendants, because Freestream was not an intended direct beneficiary of the contracts with which Defendants allegedly interfered, Freestream cannot as a matter of law seek any recovery based on those contracts. Defendants

6

also argue that, even if Freestream was an intended third-party beneficiary of the agreements, Illinois law does not permit a third-party beneficiary to bring interference claims like those brought in this case. (Dkt. 10 at 11–12.) Freestream counters that it was an intended beneficiary of the Brinley-Bolti and Brinley-Yunhua letters of intent and it has standing to bring claims against Defendants for its losses. (Dkt. 21 at 12–13.)

Under Illinois law, if a contract "is entered into for the direct benefit of a third person who is not a party to the contract, that person may sue on the contract as a third-party beneficiary." *City of Yorkville ex rel. Aurora Blacktop Inc. v. Am. S. Ins. Co.*, 654 F.3d 713, 716 (7th Cir. 2011) (citing *Carson Pirie Scott & Co. v. Parrett*, 178 N.E. 498, 501 (Ill. 1931)). If the third-party benefit is not explicitly in the contract, "its implication at least 'must be so strong as to be practically an express declaration.'" *Id.* at 717 (quoting *Barney v. Unity Paving, Inc.*, 639 N.E.2d 592, 596 (Ill. App. Ct. 1994)).

Freestream alleges that, despite being a separate broker for the transaction, it was an intended direct beneficiary of the Brinley letters of intent. Freestream points out that it participated in and may have directed the negotiations of the aircraft transaction. (Dkt. 21 at 12.) But this does not mean Freestream was the direct beneficiary of the Brinley-Bolti or Brinley-Yunhua letters of intent. Indeed, Freestream signed an entirely separate agreement with Brinley that entitled Freestream to a portion of the aircraft transaction profit. That fact alone strongly suggests that Brinley, Bolti, and Yunhua never intended Freestream to benefit directly from their separate agreements. *Bus. Sys. Eng'g, Inc. v. IBM Corp.*, 520

F. Supp. 2d 1012, 1020 (N.D. Ill. 2007) (finding third-party beneficiary was not an intended direct beneficiary of the contract because it signed a separate agreement), *aff'd*, 547 F.3d 882 (7th Cir. 2008). Although the parties may have known or expected for Freestream to benefit from the contract, that is insufficient under Illinois law for Freestream to be considered a direct beneficiary.

Freestream relies on *CSY Liquidating Corporation v. Harris Trust and Savings Bank* to argue that third-party beneficiaries may seek relief under a theory of tortious interference. 162 F.3d 929, 932–33 (7th Cir. 1998). Although that case denied relief to the plaintiff, the Court of Appeals recognized (in dicta) that such a claim can be brought under some circumstances. As the Seventh Circuit explained, the tort of intentional interference "is meant to protect the parties (including third-party beneficiaries . . .) to contracts . . . rather than persons who might be harmed by a breach of someone else's contract." *Id.* (internal citations omitted). But that dicta from *CSY Liquidating* does not compel a different result here, for although Freestream may have benefitted from the Brinley transactions if they closed, Freestream was an entirely separate third-party broker who stood to gain, if at all, only through *separate* contractual arrangements not involving Defendants. Because Freestream cannot show that any injury it may have suffered is attributable to Defendants' interference with contracts to which it was directly tied, Freestream's claims must be dismissed.

B. *Rule 9(b) Does Not Require Dismissal of Counts I-IV*

Defendants ask the Court to dismiss the complaint because it is not pleaded with the requisite particularity under Rule 9(b) of the Federal Rules of Civil

Procedure. Plaintiffs do not contest that their claims "sound in fraud" and that they must allege the actions that make up Defendants' fraudulent conduct with that heightened pleading standard. Plaintiffs, instead, counter that, because the allegations in their complaint are pleaded with the requisite specificity, Defendants' Rule 9(b) argument should be rejected.

Rule 9(b) requires that "the circumstances constituting fraud or mistake" be stated with "particularity." Fed. R. Civ. P. 9(b). That heightened pleading requirement is a response to the " 'great harm to the reputation of a business firm or other enterprise' a fraud claim can do." *Payton v. Rush–Presbyterian–St. Luke's Med. Ctr.*, 184 F.3d 623, 627 (7th Cir. 1999) (quoting *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999)). A plaintiff claiming fraud or mistake must therefore "do more pre-complaint investigation to assure that the claim is responsible and supported, 'rather than defamatory and extortionate.' " *Id.* (citation omitted). A complaint alleging fraud must provide all of the information in the first paragraph of any newspaper story, "the who, what, when, where, and how." *U.S. ex rel. Gross v. AIDS Research Alliance–Chicago*, 415 F.3d 601, 605 (7th Cir. 2005) (quoting *U.S. ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 376 (7th Cir. 2003)). But this does not require an exhaustive pre-suit investigation. Instead, the basic consideration underlying Rule 9(b) requires "fair notice" to a defendant of the alleged fraudulent conduct. *Vicom, Inc. v. Harbridge Merch. Servs, Inc.*, 20 F.3d 771, 777–78 (7th Cir. 1994).

Rule 9(b) applies to "averments of fraud," which includes some claims of interference with economic advantage. *Borsellino v. Goldman Sachs Grp., Inc.*, 477

F.3d 502, 507 (7th Cir. 2007). A claim that "sounds in fraud" can thus "implicate [Rule] 9(b)'s heightened pleading requirements." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (quoting *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 446–47 (7th Cir. 2011)).

Plaintiffs allege that their claims arise "from a fraudulent scheme orchestrated and executed by Defendants to tortiously interfere with Plaintiffs' contracts and/or prospective economic advantages." (Dkt. 1 ¶ 1.) Plaintiffs assert that Defendants made several false representations to Yunhua and Bolti to induce them to transact with the Dusek Entities. One example of that conduct is the Dusek Entities' allegedly false representations to Yunhua and Bolti that they could organize an aircraft transaction at a lower price and without a contingent seller. (*Id.* ¶¶ 35, 38.) Plaintiffs do not challenge that Rule 9(b) applies to the factual allegations supporting their claims.

Defendants contend that the complaint is not pleaded with particularity because it lacks allegations to support "how" Defendants engaged in fraudulent conduct. Defendants further suggest that, because it is premised on "information and belief," the complaint cannot possibly be pleaded with the requisite particularity. In support, Defendants separate their specificity arguments into two categories: (1) Defendants' alleged interference with negotiations between Brinley and Yunhua; and (2) Defendants' alleged interference with the agreement between Brinley and Bolti. Defendants contend that both sets of allegations fail to satisfy the Rule 9(b) standard.

Properly framed, however, Defendants' arguments address the merits of the claim; as a result, they cannot justify a dismissal of the complaint at this stage. Defendants argue, for example, that the communications Plaintiffs base their claims on are "non-actionable negotiations attorneys routinely perform for their clients" and therefore cannot be considered the basis for an interference claim. (Dkt. 10 at 5.) But under Illinois law,[2] attorney communications on behalf of their client may support a claim based on interference with a contract. *See Miller v. St. Charles Condo. Ass'n*, 491 N.E.2d 125, 128 (Ill. App. Ct. 1986) (denying summary judgment on intentional interference with contractual relations against attorney). In essence, Defendants' argument challenges the substance and effect of the alleged communications, not the specificity with which they have been pleaded. But that issue cannot be taken on through a motion to dismiss.

Nor does the complaint fail to allege a claim for intentional interference with the requisite specificity. Plaintiffs allege there were valid and enforceable letters of

---

[2] Illinois law applies. When a federal court "hears a case in diversity, it does not necessarily apply the substantive law of the forum state; rather, it applies the choice-of-law rules of the forum state to determine which state's substantive law applies.*" Auto–Owners Ins. Co. v. Websolv Computing, Inc.*, 580 F.3d 543, 547 (7th Cir. 2009). Illinois applies the "most significant contacts" test, which "involves balancing a number of factors, including the place where the injury occurred; the place where the conduct causing the injury occurred; the domicile or place of business of each party; and the place where the relationship between the parties is centered." *Ennenga v. Starns*, 677 F.3d 766, 774 (7th Cir. 2012).

Defendants contend in their brief that they are unable to determine what law applies because of Plaintiffs' "minimal factual averments." (Dkt. 10 at 5 n.2.) Defendants thus do not concede that Illinois law applies. Defendants cite to Illinois law in their motion to dismiss, however, because Plaintiffs' claims were premised on Illinois law. This is sensible, because the alleged injury, interference with contract, occurred in Illinois, and Defendants communicated with the third-party sellers and buyers from their office in Illinois. Defendants also decline to suggest what alternative law *should* apply. In the absence of any argument by Defendants that a different state's law should apply (Defendants' reticence means they have likely forfeited the argument), the Court will apply Illinois law.

intent between Brinley, Yunhua, and Bolti. (Dkt. 1 ¶ 27). Plaintiffs further allege that Defendants knew about those letters of intent. (*Id.* ¶ 32). They continue that Defendants communicated with Yunhua and Bolti intending to disrupt Plaintiffs' agreements, (*id.* ¶¶ 34–37), and that the transaction eventually fell apart, (*id.* ¶¶ 42–44). Plaintiffs also contend that Brinley suffered damages. (*Id.* ¶ 58.) Discovery and trial may prove those allegations true—or not. But the complaint is pleaded with sufficient detail to put Defendants on "fair notice" of Plaintiffs' claim. Defendants' motion to dismiss based on Rule 9(b), therefore, is denied.

C.    *Counts II and IV are Duplicative of Counts I and III*

Defendants next ask the Court to dismiss Counts II and IV of the complaint as duplicative of Counts I and III. Moreover, Defendants contend that Plaintiffs' characterization of Counts II and IV as "aiding and abetting" claims is improper. Defendants point out that aiding and abetting claims are not independent torts under Illinois law; rather, aiding and abetting is a "theory for holding the person who aids and abets the tort liable." (Dkt. 10 at 10.) In response, Plaintiffs fail adequately to address Defendants' arguments and instead merely state that their "aiding and abetting claims allege that Defendants substantially assisted *the Dusek Entities*' tortious conduct—not their own." (Dkt. 21 at 11.)

Defendants correctly point out that Illinois law does not recognize aiding and abetting as an independent tort. *Hefferman v. Bass¸* 467 F.3d 596, 601 (7th Cir. 2006). Yet the rejection of aiding and abetting as an independent tort "is not the same thing as saying that there is never liability for aiding and abetting." *Id.* Instead, the inchoate aiding and abetting liability is incorporated into the substantive tort. For

12

example, the *Hefferman* plaintiff alleged that the defendant's attorney aided and abetted his client's fraud and breach of fiduciary duty. *Id.* The court found the allegations stated a redressable claim for the attorney's contribution to the fraud— not for aiding and abetting his client's fraud. *Id.*

As in *Hefferman*, so too here. Plaintiffs' theory of aiding and abetting tortious interference is duplicative of the substantive counts. Plaintiffs must prove the elements of tortious interference against the Defendants, as there are no independent elements to justify the separate aiding and abetting claims. Plaintiffs contend that Defendants engaged in tortious interference through the advice they provided their clients. If true, there is no additional allegation or proof beyond the tortious interference to show aiding or abetting. To the extent Plaintiffs seek to proceed on a claim for aiding and abetting as independent torts, they are misguided. Accordingly, Defendants' motion to dismiss Counts II and IV is granted.

D.   *Unjust Enrichment*

Defendants also seek to dismiss Count V of Plaintiffs' complaint because it fails to state a claim for unjust enrichment. In Illinois, to state a cause of action "based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience.' " *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 516 (7th Cir. 2011) (quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989)). If an unjust enrichment claim rests on the same improper conduct alleged in another claim, the unjust enrichment claim "will be tied to this related claim—and, of course,

13

unjust enrichment will stand or fall with the related claim." *Id.* at 517. Although a plaintiff "need not show loss or damages, he must show a detriment—and, significantly, a connection between the detriment and the defendant's retention of the benefit." *Id.* at 518–19 (citation omitted).

In simplest terms, Plaintiffs allege that Defendants received fees in exchange for their wrongful conduct on behalf of the Dusek Entities. To state a cognizable claim for unjust enrichment, however, Plaintiffs must plausibly allege not only that Defendants' actions violate "fundamental principles of justice, equity, and good conscience," *id.* at 516, but also that Defendants retained a benefit to Plaintiffs' detriment.

It is on this latter requirement that the unjust enrichment claim fails. Plaintiffs fail to allege plausibly that Defendants' retention of fees paid by the *Dusek Entities*—not by Plaintiffs—has somehow harmed Plaintiffs. It might eventually be proven that Defendants harmed Brinley (Freestream's claims, of course, are dismissed) and that the harm must be remedied; but that recovery will have to come through a legal vehicle other than the equitable theory of unjust enrichment. Put differently, the connection in this case between the alleged benefit and alleged detriment "is insufficient to support a cause of action for unjust enrichment. Unjust enrichment is not a mode of imposing punitive damages; it is a means of recovering something that the defendant is not entitled to but is unfairly possessing *to the plaintiff's detriment*." *Id.* at 520 (emphasis added). Plaintiffs have failed to allege a sensible theory as to how the retention of fees paid to a law firm by a nonparty causes a detriment to Plaintiffs. As a result, the count for unjust enrichment is dismissed.

E.     *Damages*

Separately, Defendants ask the Court to strike Plaintiffs' request for punitive damages, disgorgement, attorneys' fees, and pre-judgment interest. Defendants contend that Illinois does not support those categories of damages for the Plaintiffs' claims. Regardless of whether Plaintiffs may be entitled to those damages at some later point, Rule 12(f) is not an appropriate tool to eliminate those forms of relief at this point. Defendants (and Plaintiffs) fail to cite any cases where Rule 12(f) strikes a form of damages from a complaint. The Seventh Circuit has made clear that "perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived." *Wells v. Unisource Worldwide, Inc.*, 289 F.3d 1001, 1008 (7th Cir. 2002); *see also Vera Bradley Designs, Inc. v. Aixin Li*, 2021 WL 1088323, at *6 (N.D. Ill. Mar. 22, 2021) (describing a stance that fails to rely on case law in support as "perfunctory and undeveloped") (quotation omitted). This ruling is without prejudice to Defendants' renewal of their damages-related arguments at a later stage.

IV.    **CONCLUSION**

Defendants' motion to dismiss is granted in part and denied in part. Freestream's claims against the Defendants fail as a matter of law and are therefore dismissed in their entirety. Brinley's claims for aiding and abetting (Counts II and IV) and for unjust enrichment (Count V) are dismissed. Defendants' motions to dismiss based on failure to plead fraud with particularity and to strike the damages-related prayers for relief are denied. Brinley's claims in Counts I and III may proceed past the pleading stage.

SO ORDERED in No. 19-cv-05242.

Date: January 7, 2022

_____

JOHN F. KNESS
United States District Judge